IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROMELLO S. BLAND,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

Case No. 3:22-CV-2074-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

      This matter is before the Court on the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "Section 2255 motion") filed by Petitioner Romello S. Bland ("Bland"). (Doc. 1). Bland contends that his convictions and corresponding sentences for carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) must be vacated because the predicate felony of carjacking, as charged under a theory of co-conspirator liability, does not constitute a crime of violence. Bland further contends ineffective assistance of counsel for the failure to advance this argument. For the reasons set forth below, the Section 2255 motion is denied.

### BACKGROUND

**A.    Offense Conduct**

      Bland agreed at a change of plea hearing held in the underlying criminal case that the following facts stipulated by the Government in support of his guilty plea were true and correct.

      On July 28, 2017, Bland traveled with two co-conspirators, Mark Richardson and

Trevion McClendon, from St. Louis, Missouri, into the Southern District of Illinois with the intent to commit a carjacking. (Crim. Doc. 226 at ¶ 1).[1] Shortly after midnight, Bland and his co-conspirators identified a 2011 Jeep Grand Cherokee ("Jeep") as their target vehicle and followed it to the driver's residence in Maryville, Illinois, which lies within this jurisdiction. (*Id.* at ¶ 2, 10). Richardson confronted the driver who was repairing the Jeep in his garage, pointed a handgun with an extended magazine at him, and demanded the keys to the vehicle, his wallet, and his cellular phone. (*Id.* at ¶ 2). Richardson then fled in the Jeep to St. Louis, Missouri. (*Id.*). Bland and McClendon followed in their original conveyance. (*Id.*).

On August 1, 2017, Bland, Richardson, McClendon, and a fourth co-conspirator, Joseph Dixon, traveled in the stolen Jeep from St. Louis, Missouri, into the Southern District of Illinois with the intent to commit another carjacking. (*Id.* at ¶ 3). Later that night, the four men identified as their target vehicle a 2013 Nissan Altima ("Nissan") at a gas station in Swansea, Illinois, which also lies within this jurisdiction. (*Id.* at ¶ 4, 10). After positioning the Jeep in front of the Nissan, Richardson exited and confronted the driver. (*Id.* at ¶ 4). Richardson pointed a black handgun with an extended magazine at the driver and demanded that she exit the vehicle. (*Id.*). Richardson then fled in the Nissan, and the other three followed in the stolen Jeep. (*Id.*).

Minutes later, the four men identified a 2009 Pontiac G8 ("Pontiac") as their next target vehicle. (*Id.* at ¶ 5). While Richardson positioned the stolen Nissan behind the target vehicle, the other three simultaneously positioned the stolen Jeep in front of it—effectively boxing the target vehicle. (*See id.*). Richardson exited the stolen Nissan and approached the target vehicle

---

[1] As used here, "Crim. Doc." is a citation to *United States v. Bland*, Case No. 3:18-cr-30014-NJR-1.

again with a handgun with an extended magazine. (*Id.*). Bland exited the stolen Jeep and joined Richardson in directly approaching the driver. (*Id.*). Bland forcibly opened the driver-side door, pointed a gun at the driver, and demanded that she exit her vehicle. (*Id.*). After the driver and her children exited, Bland fled in the Pontiac. (*Id.*). Richardson followed Bland in the stolen Nissan, and the other two followed in the stolen Jeep. (*Id.*).

On August 2, 2017, law enforcement officers located the stolen Pontiac and attempted a traffic stop. (*Id.* at ¶ 6). The driver, who was later identified as Bland, fled from the officers but was eventually arrested in Granite City, Illinois, which also lies in this jurisdiction. (*Id.* at ¶¶ 6, 10). After the recovery of the stolen Pontiac, law enforcement searched the vehicle and found a loaded Glock Model 23 pistol. (*Id.* at ¶ 7). Bland was subsequently questioned, during which he was read his *Miranda* rights. (*See id.*). After waiving those rights, Bland admitted to his involvement in the three carjackings, as well as his possession and use of the Glock Model 23. (*Id.*). Bland also identified Richardson, McClendon, and Dixon as the other individuals involved in the carjackings. (*Id.*).

On August 3, 2017, law enforcement officers located the stolen Nissan and attempted a traffic stop. (*Id.* at ¶ 8). The driver and a passenger, who were later identified, respectively, as Richardson and McClendon, fled from the officers in the stolen Nissan. (*Id.*). After an extensive pursuit, the two were arrested. (*Id.*). During a search of Richardson's person, the officers found a bag containing a Glock Model 27 pistol with one round in the chamber and an extended magazine with 17 rounds of ammunition. (*Id.* at ¶ 9). The weapon matched the description of the gun and magazine used in the carjacking of both the Jeep and the Nissan. (*Id.*). Also found on Richardson's person was a car key that was later identified as the key to the stolen Nissan. (*Id.*). On McClendon's person, the officers found keys to the stolen Jeep.

(*Id.*).

**B.   Indictment**

Through the filing of a superseding indictment (Crim. Doc. 63) on June 19, 2018, Bland was formally charged on seven counts: one count of conspiring to commit carjacking; three counts of carjacking; and three counts of carrying and using of a firearm during a crime of violence. Count One referred to the charge of conspiracy in violation of 18 U.S.C. § 371. (*Id.* at 1-3). Counts Two, Four, and Six referred to the carjacking of the Jeep, the Nissan, and the Pontiac, respectively, in violation of 18 U.S.C. § 2119 under a theory of co-conspirator liability pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946). (*Id.* at 3-5). Counts Three, Five, and Seven referred to the carrying and using of a firearm during the carjackings charged in Counts Two, Four, and Six, respectively, in violation of 18 U.S.C. § 924(c)(1)(A) under the *Pinkerton* theory of liability. (*Id.*).

> For reference, section 924(c)(1)(A) provides:
>
> [e]xcept to the extent that a greater minimum sentence is otherwise provided . . . , any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i)   be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii)  if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). Additionally, under *Pinkerton*, a defendant can be held vicariously liable for a substantive offense committed by another member of a conspiracy if: (i) the

defendant was a party to the conspiracy; (ii) the offense was within the scope of the unlawful project; (iii) the offense was committed in furtherance of the conspiracy; and (iv) the defendant could have reasonable foreseen the offense as a necessary or natural consequence of the unlawful agreement. *United States v. McClain*, 2024 WL 50868, at *4 (N.D. Ill. Jan. 4, 2024) (quoting *Pinkerton*, 328 U.S. at 647) (quotations omitted); *see also United States v. Smith*, 223 F.3d 554, 572-73 (7th Cir. 2000).

### C.   Motion to Dismiss Counts Three and Five

On October 11, 2019, Bland filed a motion to dismiss Counts Three and Five (Crim. Doc. 162), arguing that their predicate offense of carjacking as charged in Counts Two and Four effectively became the offense of conspiracy to commit carjacking because Counts Two and Four relied on the co-conspirator liability theory under *Pinkerton* and therefore could not constitute a "crime of violence" for purposes of 18 U.S.C. § 924(c)(1)(A) (*see id.* at 4-6). The undersigned denied the motion, explaining that "even though [a] defendant did not meet the elements under a [section] 924(c) conviction [themselves]," they could be convicted "under the *Pinkerton* theory of liability because a co-conspirator did." (Crim. Doc. 169 at 4 (citing *United States v. Conley*, 875 F.3d 391, 397-401 (7th Cir. 2017))).

### D.   Guilty Plea, Pre-sentencing, and Sentencing

Following multiple substitutions of counsel (*see* Crim. Docs. 37, 61, 145, 175), on February 20, 2020, the undersigned appointed attorney John D. Stobbs ("Mr. Stobbs") to represent Bland (Crim. Doc. 175). In advance of a final pre-trial conference, Bland moved for a combined hearing for change of plea and sentencing, and the undersigned granted his request. (Crim. Docs. 218, 220).

In preparation for the combined hearing, the probation office issued a presentence

investigation report (Crim. Doc. 219), which was the second revised and final version, following an initial report (Crim. Doc. 85) and a first revised report (Crim. Doc. 97). The presentence investigation report reflected a total offense level of 24 (Crim. Doc. 219 at 11) and a criminal history score of zero points, which placed Bland in a criminal history category of I (*id.* at 12).[2] It also identified the applicable statutory terms of imprisonment, as follows: (i) a maximum term of 60 months on Count One; (ii) a maximum term of 180 months on each of Counts Two, Four, and Six; and (iii) a mandatory minimum term of 84 months, up to a maximum term of life imprisonment, on each of Counts Three, Five, and Seven, with the sentences imposed on the three counts to run consecutively. (*Id.* at 18). The advisory sentencing guideline range was: (i) 51 to 60 months on Count One; (ii) 51 to 63 months on each of Counts Two, Four, and Six; and (iii) 84 months on each of Counts Three, Five, and Seven, to run consecutively—resulting in a total term of imprisonment of 303 to 315 months.[3] (*Id.* at 18-19).

On October 6, 2020, at the combined hearing held before the undersigned, Bland pleaded guilty to all seven counts (Crim. Doc. 223) pursuant to a written plea agreement (Crim. Docs. 224, 225). The undersigned engaged Bland in the colloquy required by Rule 11 of the Federal Rules of Criminal Procedure, and the Government recited the stipulation of facts in support of the plea. (Crim. Doc. 245 at 4-27). Finding Bland competent, and his guilty plea entered knowingly and voluntarily, the undersigned accepted the plea. (*Id.* at 27-28).

Following Bland's guilty plea, the undersigned sentenced Bland to a 252-month term

---

[2] Bland's total offense level and criminal history category remained unchanged across all versions of the report. (Crim. Doc. 85 at 11-12; Crim. Doc. 97 at 11-12; Crim. Doc. 219 at 11-12).
[3] Although the presentence investigation report notes a total offense level of 25 on page 18 in its guideline calculations, this appears to be a typographical error. Page 11 of the report reflects a total offense level of 24, and Bland was advised of a total offense level of 24 at the combined hearing (Crim. Doc. 245 at 30, 34).

of imprisonment, which consisted of three consecutive 84-month terms on Counts Three, Five, and Seven, followed by five years of supervised release. (Crim. Doc. 223 at 1). No term of imprisonment was imposed on Counts One, Two, Four, and Six for the conspiracy or carjackings. (*Id.*). Judgment was entered on October 6, 2020 (Crim. Doc. 228); it was later amended due to a clerical error (Crim. Doc. 251).

E.      **Appeal**

On October 19, 2020, Bland filed a timely notice of appeal (Crim. Doc. 232), and, shortly thereafter, Mr. Stobbs moved to withdraw as counsel on appeal, *United States v. Bland*, No. 20-3047 (7th Cir. Oct. 28, 2021), Doc. 5. On November 3, 2020, the United States Court of Appeals for the Seventh Circuit granted Mr. Stobbs's motion to withdraw and appointed counsel from the Office of the Federal Defender as appellate counsel. *Id.*, Doc. 9.

On April 1, 2021, appellate counsel filed a motion to withdraw on grounds that "there exist[ed] no non-frivolous issue that [could] be raised in [the] appeal on behalf of [Bland]." *Id.*, Doc. 15. Appellate counsel noted that Bland sought to challenge the validity of his guilty plea and the written waiver of the right to appeal his sentence. *See id.*, Doc. 17 at 20-21. According to appellate counsel, any such challenges would be frivolous insofar as Bland's guilty plea was knowing and voluntary, and his waiver of the right to appeal was express, unambiguous, knowing, and voluntary. *Id.* at 20-36. Appellate counsel further noted that Bland sought to "argue his motion to dismiss [Counts Three and Five] should have been granted because conspiracy to commit a crime of violence cannot be a predicate offense under § 924(c)[,]" but "the predicate offense[] for each § 924(c) [violation] was a carjacking offense, which is a crime of violence." *Id.* at 29.

On October 28, 2021, the Seventh Circuit granted appellate counsel's motion to

withdraw and dismissed Bland's appeal. *United States v. Bland*, 2021 WL 5003419, at *2 (7th Cir. Oct. 28, 2021). Agreeing with appellate counsel that "any argument would be frivolous[,]" the Seventh Circuit determined that Bland was not "actually or legally innocent of any charge[,]" and his guilty plea was knowing and voluntary. *Id.* at *1. The Seventh Circuit further determined that Bland's waiver of the right to appeal was unambiguous, that "Bland knew he was waiving his appellate rights[,]" and that an exception to the appeal waiver did not apply insofar as his "sentence of 21 years' imprisonment did not exceed the statutory maximum, and the court did not consider any constitutionally impermissible factors at sentencing." *Id.* at *2.

**F.     Section 2255 Proceedings**

On September 2, 2022, the Clerk of Court received the Section 2255 motion. (Doc. 1). Upon leave of court (*see* Docs. 2, 3, 7, 11), Bland filed two supplemental briefs (Docs. 5, 7), through which he largely reiterated the same facts and arguments advanced in the Section 2255 motion. The Government filed its response to the Section 2255 motion. (Doc. 9). Bland filed a reply. (Doc. 13).

**LEGAL STANDARD**

28 U.S.C. § 2255 provides a federal prisoner with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of

constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## DISCUSSION

**A.     Crimes of Violence Under 18 U.S.C. § 924(c)**

Bland argues that his convictions on Counts Three, Five, and Seven pursuant to 18 U.S.C. § 924(c)(1)(A) must be vacated because the underlying crime of carjacking is not a crime of violence for purposes of section 924(c) when, as in Counts Two, Four, and Six, the carjacking charge is based on a theory of co-conspirator liability under *Pinkerton*. (Doc. 1-1 at 2-3; Doc. 5 at 3-5; Doc. 8 at 3-5). In support of his argument regarding the crime of carjacking charged under the *Pinkerton* co-conspirator liability, Bland cites primarily to *United States v. Davis*, 588 U.S. 445 (2019), and *United States v. Taylor*, 596 U.S. 845 (2022). In *Davis*, the Supreme Court struck down subsection (3)(B) of section 924(c), which provided a residual or "catch-all" definition of a crime of violence for purposes of section 924(c), holding it unconstitutionally vague in violation of the principles of due process and separation of powers. *Davis*, 588 U.S. at 451-70. The invalidation of subsection (3)(B) left subsection (3)(A) to define a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A). Subsequently, in *Taylor*, the Supreme Court held that attempted robbery under the Hobbs Act, 18 U.S.C. § 1951(a), does not constitute a crime of violence under subsection (3)(A), or the "elements clause" of section 924(c), because an attempted robbery under the Hobbs Act does not require "proof that the defendant used, attempted to use, or threatened to use force[.]" *Taylor*, 596 U.S. at 852. For reference, attempted robbery under the Hobbs Act

requires that (i) "[t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force," and (ii) they "completed a 'substantial step' toward that end." *Id.* at 851 (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)).

As a threshold matter, unlike in *Taylor* where the predicate offense was attempted robbery, the predicate crime of violence that supported Bland's convictions under 18 U.S.C. § 924(c) was *completed* carjacking in violation of 18 U.S.C. § 2119. The crime of completed carjacking requires: (i) the taking of a motor vehicle; (ii) that had been transported, shipped, or received in interstate or foreign commerce; (iii) from the person or presence of another; (iv) by force or intimidation; and (v) with the intent to cause death or serious harm. *United States v. Lopez*, 271 F.3d 472, 486 (3d Cir. 2001) (citing 18 U.S.C. § 2119). Courts have construed the "force and violence or intimidation" element to require "the use or threatened use of physical force" sufficient to satisfy the elements clause of section 924(c). *See Jordan v. United States*, 2022 WL 16530880, at *10 (E.D. Wis. Oct. 28, 2022); *United States v. Cortez*, 2024 WL 4601954, at *18 (E.D. Wis. Oct. 29, 2024); *see also United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016) (quoting *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991)) (quotations omitted) ("Intimidation means the threat of force.") *as amended* (June 26, 2017). Completed carjacking, thus, constitutes a crime of violence for purposes of section 924(c).[4]

Turning to the crux of Bland's argument, *Pinkerton* liability does not alter the statutory elements of the underlying substantive offense or convert that offense into a conspiracy. It merely allows proof of those elements through the acts of co-conspirators. As applied to the offense of completed carjacking, this means that the statutory element requiring that a motor

---

[4] Whether attempted carjacking under 18 U.S.C. § 2119 satisfies the elements clause of section 924(c) need not be addressed here insofar as the question is irrelevant to the resolution of the Section 2255 motion in this case.

vehicle be taken "by force or intimidation" remains in full force even where the Government proceeds under a *Pinkerton* co-conspirator liability theory. *Pinkerton* liability requires proof that at least one co-conspirator committed each of the elements of the underlying substantive offense. *United States v. Stevens*, 70 F.4th 653, 662 (3d Cir. 2023). The Government must nevertheless establish that either the defendant or a co-conspirator committed each element of carjacking under 18 U.S.C. § 2119, including the use or threat of force. *See id.* ("[U]nder a *Pinkerton* liability theory, where the use of physical force is an element of the completed offense," it suffices to impute use of force to co-conspirators.").

Accordingly, completed carjacking in violation of 18 U.S.C. § 2119 constitutes a crime of violence for purposes of section 924(c), regardless of whether the charge is based on *Pinkerton* liability.

**B.      Ineffective Assistance**

Bland contends that his attorneys, including Mr. Stobbs and appellate counsel, rendered deficient performance in failing to argue that Counts Three, Five, and Seven should have been dismissed for "lack of a valid predicate offense."[5] (Doc. 5 at 5-9; Doc. 8 at 5-9; *see also* Doc. 13 at 3-4). According to Bland, but for counsel's errors, he would not have pleaded guilty to Counts Three, Five, and Seven. (Doc. 5 at 8; Doc. 8 at 8).

A Sixth Amendment claim of ineffective assistance of counsel is analyzed under the Supreme Court's two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms.'"

---

[5] Bland also complains that counsel failed to argue that "the residual clause of § 924(c) was unconstitutionally vague[.]" (Doc. 5 at 5-6; Doc. 8 at 5-6). However, the residual clause, 18 U.S.C. § 924(c)(3)(B), was never implicated in any of Bland's convictions.

*McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). The petitioner also must show that "counsel's deficient performance prejudiced him, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McElvaney*, 735 F.3d at 532 (quoting *Strickland*, 466 U.S. at 688). When challenging a sentence, "a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland,* 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence" in the sentence. *Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006). It is not enough to show that the errors possibly had "some conceivable effect" on the sentence. *Strickland*, 466 U.S. at 694.

A federal court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong insofar as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

As discussed above, Bland's argument that *Pinkerton* liability disqualifies completed carjacking as a predicate crime of violence for his section 924(c) convictions is without merit. Failure to raise meritless arguments does not render deficient performance. *See Jones v. DeTella*, 105 F.3d 660 (7th Cir. 1996) (citing *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993)). Bland does not argue that counsel's representation otherwise fell below an objective standard of reasonableness to establish deficient performance.

Moreover, the validity of Bland's guilty plea was not prejudiced by counsel's ostensible failure to challenge completed carjacking as the predicate crime of violence. As the

Seventh Circuit observed on appeal, "[a]t his plea hearing, Bland confirmed that he had read, understood, and signed the stipulation of facts, and he reaffirmed his agreement after hearing it read aloud." *Bland*, 2021 WL 5003419, at *1. The undersigned, in compliance with Rule 11 of the Federal Rules of Criminal Procedure, "explained the elements of each offense, and in pleading guilty, Bland admitted them." *Id.* The undersigned then "determined that Bland understood the elements of the charged offenses, the maximum penalties, the trial and appeal rights that he was waiving, and the role of the sentencing guidelines." *Id.* The undersigned "also verified that Bland was competent to enter a plea and doing so of his own accord: he was alert, feeling well, and not under the effects of any substance, and no one threatened him or induced, pressured, or forced him to plead guilty." *Id.* The record does not suggest that but for counsel's alleged errors, Bland would not have pleaded guilty and would have insisted on going to trial. *See United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985)).

Bland, thus, fails to demonstrate either the deficient performance or resulting prejudice required under the *Strickland* standard.

## Conclusion

For the reasons stated above, the Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) filed by Petitioner Romello S. Bland pursuant to 28 U.S.C. § 2255 is **DENIED**. This civil action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)) (emphasis omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that to obtain a certificate of appealability after dismissal on procedural grounds, a petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling").

Here, there is no basis for finding that reasonable jurists would debate that Bland presented a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability is denied.

### NOTICE OF APPELLATE RIGHTS

If Bland wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Bland chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned Chief District Judge has already declined to issue a certificate of appealability.

So, Bland must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within **30 days** from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Bland files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Bland cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Bland plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Bland wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within **28 days** of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment,

a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire **30 days** from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Bland showing excusable neglect or good cause.

**IT IS SO ORDERED.**

DATED:  May 7, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**